# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

PAUL MICHAEL HUSTON,

      Plaintiff,

vs.

CORY TURNER, et al.,

      Defendants.

No. C24-4043-LTS

**MEMORANDUM OPINION AND ORDER**

## I. INTRODUCTION

This case is before me on a motion (Doc. 7) to dismiss filed by defendants Cory Turner, Clint Fredriksen, Brent Koedam and Barbara Dineli. Plaintiff Paul Huston has filed a resistance (Doc. 9).[1] Defendants have filed a supplemental brief (Doc. 12) in support of their motion to dismiss. Huston has filed a second resistance, with which he has included evidentiary support. Doc. 13. Defendants have filed a motion (Doc. 14) to strike Huston's second resistance, to which Huston has filed a resistance. Doc. 15. Oral argument is not necessary. *See* Local Rule 7(c). The motion to strike will be denied, as I find it appropriate to consider all of the information Huston has submitted in resistance to the motion to dismiss.

---

[1] Huston listed Arthur Triplett as an additional plaintiff, but the factual allegations relate to Huston only. Doc. 4 at 1-2. Defendants argue that Triplett does not have standing to sue because he has not alleged he that has suffered an injury in fact. Doc. 8 at 17-19. Neither Huston nor Triplett has responded to this argument. Without standing, a court cannot hear a plaintiff's case and to have standing, "the plaintiff must have suffered an 'injury in fact.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Because Triplett has not alleged he has been injured, he has no standing and must be dismissed from this case.

## II.    BACKGROUND

Huston is a patient committed to the Civil Commitment Unit for Sexual Offenders (CCUSO) in Cherokee, Iowa.  Doc. 3 at 1.  Defendants are CCUSO staff members.  Doc. 4 at 1.  Huston filed a pro se complaint (Doc. 4) in which he alleged the institution's policy regarding patient accounts violated his rights under the Free Exercise Clause and the Religious Land Use and Institutionalized Persons Act (RLUIPA).  *Id.* at 1-2.

At CCUSO, there are two types of patient accounts: non-restricted and restricted.  Doc. 4 at 9 ¶¶ 5-7.  These accounts differ as to the source of their funds and how patients can use the funds.  *Id.*  Non-restricted accounts contain money that patients earn from their facility assignments or treatment allowances.  *Id.*  Huston alleges that he earns $12.80 per pay period.[2]  *Id.* at 2.  It is unclear whether he receives this weekly or biweekly.  Restricted accounts contain funds that patients receive from external savings accounts or other "external sources such as friends, family, legal settlements, and various entitlement programs."  *Id.* at 9 ¶ 7.  Patients cannot spend more than $100 annually from their restricted account on religious items.  *Id.*  Non-restricted accounts do not have this limit.  *Id.* ¶ 5.

Huston is an adherent of Messianic Judaism and alleges that he is an ordained rabbi with a doctorate in theology.  Doc. 4 at 2.  He contends that as an ordained rabbi, he "require[s] more religious materials to keep up [with his] vocation."  *Id.*  Noting the religious item spending limit, Huston claims that scholarly tomes and research materials he needs cost more than $150.  *Id.*  He specifically asserts that Messianic Judaism "requires the study of religious tomes."  *Id.* at 5.  Huston also alleges that other materials necessary for his religious practice such as tefillin and prayer shawls cost more than the $100 limit.  *Id.* at 1-2.  Huston alleges that "it is religious persecution for the institution to limit how much [and] when we can purchase our worship items." *Id.* at 1.  He notes

---

[2] The excerpt of the CCUSO handbook that Huston attached shows that phase III patients receive $52 per pay period.  *Id.* at 9.

that he would be able to purchase religious items by saving funds from his non-restricted account, but it would take much longer. *Id.* at 5.

Trying to circumvent the religious spending limit, Huston had a cashier's check in the sum of $153.24 addressed to a religious book distributor sent to him from his outside bank account. *Id.* at 10. Defendants confiscated the check and allowed Huston to call the bank to cancel the check. *Id.* at 1. Huston claims that when he called the bank, they said that the check could not be cancelled. *Id.* Therefore, he claims the defendants stole his check. *Id.*

After initial review, I allowed his Free Exercise Clause and RLUIPA claims to proceed. Doc. 3 at 5-6. Huston seeks the following relief: (1) ending the $100 limit on religious item purchases from restricted accounts; (2) the return of his cashier's check; (3) promotion to phase IV in the CCUSO program; (4) $120 and (5) all court fees in the matter paid for by the State of Iowa. Doc. 4 at 2.

### III.    APPLICABLE STANDARDS

### A.    *Matters Outside the Pleadings*

"If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). A "court has complete discretion to determine whether or not to accept any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion." *Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697, 701 (8th Cir. 2003).

After defendants filed a motion (Doc. 7) to dismiss, Huston filed two resistances. Docs. 9, 13. In his second resistance (Doc. 13), he included two documents: (1) an excerpt from an unknown prayer book and (2) online prices for prayer shawls. Doc. 13 at 1-5. In response, defendants move to strike this resistance, stating that they do not consent to have their motion to dismiss converted into a summary judgment motion. Doc. 14 at 1. Defendants further argue that this conversion would be premature because they

have not yet received discovery.  *Id.*  Huston argues that I should consider the exhibits because he claims that he referenced them in his original pleadings.  Doc. 15 at 1.  I decline to consider these exhibits because they duplicate factual assertions in his complaint.  Therefore, defendants' motion to dismiss will not be converted into a motion for summary judgment.

## B.  *Rule 12(b)(6)*

The Federal Rules of Civil Procedure authorize a pre-answer motion to dismiss for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  The Supreme Court has provided the following guidance in considering whether a pleading properly states a claim:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  As the Court held in [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007)], the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.  *Id.*, at 555, 127 S. Ct. 1955 (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L.Ed.2d 209 (1986)).  A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  550 U.S. at 555, 127 S. Ct. 1955.  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."  *Id.*, at 557, 127 S. Ct. 1955.

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Id.*, at 570, 127 S. Ct. 1955.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Id.*, at 556, 127 S. Ct. 1955.   The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  *Ibid.*  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Id.* at 557, 127 S. Ct. 1955 (brackets omitted).

4

*Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009).

Courts assess "plausibility" by "'draw[ing] on [their own] judicial experience and common sense.'" *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 679). Also, courts "'review the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation.'" *Id.* (quoting *Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 n.4 (8th Cir. 2010)). While *factual* "plausibility" is typically the focus of a Rule 12(b)(6) motion to dismiss, federal courts may dismiss a claim that lacks a cognizable *legal* theory. *See, e.g.*, *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013); *Ball v. Famiglio*, 726 F.3d 448, 469 (3d Cir. 2013); *Commonwealth Prop. Advocates, L.L.C. v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1202 (10th Cir. 2011); *accord Target Training Intern., Ltd. v. Lee*, 1 F. Supp. 3d 927 (N.D. Iowa 2014).

In considering a Rule 12(b)(6) motion to dismiss, ordinarily the court "cannot consider matters outside the pleadings without converting the motion into a motion for summary judgment." *McMahon v. Transamerica Life Ins.*, No. C17-149-LTS, 2018 WL 3381406, at *2 n.2 (N.D. Iowa July 11, 2018); *see* Fed. R. Civ. P. 12(b)(6). On the other hand, when a copy of a "written instrument" is attached to a pleading, it is considered "a part of the pleading for all purposes," pursuant to Federal Rule of Civil Procedure 10(c). Thus, when the pleadings necessarily embrace certain documents, I may consider those documents without turning a motion to dismiss into a motion for summary judgment. *Id.* These documents include "exhibits attached to the complaint." *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003).

When a complaint does not state a claim for relief that is plausible on its face, the court must consider whether it is appropriate to grant the pleader an opportunity to replead. The rules of procedure permit a party to respond to a motion to dismiss by amending the challenged pleading "as a matter of course" within 21 days. *See* Fed. R. Civ. P. 15(a)(1)(B). Thus, when a motion to dismiss highlights deficiencies in a pleading that can be cured by amendment, the pleader has an automatic opportunity to

5

do so.  When the pleader fails to take advantage of this opportunity, the question of whether to permit an amendment depends on considerations that include:

> whether the pleader chose to stand on its original pleadings in the face of a motion to dismiss that identified the very deficiency upon which the court dismissed the complaint; reluctance to allow a pleader to change legal theories after a prior dismissal; whether the post-dismissal amendment suffers from the same legal or other deficiencies as the dismissed pleading; and whether the post-dismissal amendment is otherwise futile.

*Meighan v. TransGuard Ins. Co. of Am.,* 978 F. Supp. 2d 974, 982 (N.D. Iowa 2013).

## IV.   DISCUSSION

"Section 1983 provides a remedy against any person who, under color of state law, deprives another of rights protected by the Constitution." *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992) (internal quotation marks omitted).  Huston alleges that defendants violated his rights under the Free Exercise Clause of the First Amendment of the United States Constitution.  The First Amendment, which applies to the states through the Due Process Clause of the Fourteenth Amendment, *see Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940), provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ."  U.S. Const. amend I.  Huston also alleges violations of RLUIPA, which provides in relevant part:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person –
>
> (1)    is in the furtherance of a compelling governmental interest; and
>
> (2)    is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a).  Huston alleges that defendants violated his rights under the

First Amendment and RLUIPA by refusing to allow him to make religious purchases greater than $100 annually from his restricted account. Doc. 4 at 1-2.

"[W]hen faced with both a Free Exercise claim and a RLUIPA claim, a court must, as a threshold matter, inquire as to whether the prison has placed a 'substantial burden' on the prisoner's ability to practice his religion." *Gladson v. Iowa Dept. of Corrections*, 551 F.3d 825, 833 (8th Cir. 2009) (quoting *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 813 (8th Cir. 2008)). "Once it is determined that a regulation imposes a substantial burden on a prisoner, the review of that burden under the Free Exercise Clause differs from [ ] RLUIPA." *Id.* To substantially burden one's free exercise of religion means the regulation or action:

> must significantly inhibit or constrain conduct or expression that manifests some central tenet of a person's individual religious beliefs; must meaningfully curtail a person's ability to express adherence to his or her faith; or must deny a person reasonable opportunities to engage in those activities that are fundamental to a person's religion.

*Murphy v. Mo. Dep't of Corr.*, 372 F.3d 979, 988 (8th Cir. 2004) (internal citations omitted). Regarding RLUIPA, the Eighth Circuit Court of Appeals has further clarified:

> Although we stated in *Murphy* that the conduct or expression must manifest a "central tenet" of the person's religious beliefs, the Supreme Court has since clarified that "RLUIPA bars inquiry into whether a particular belief or practice is 'central' to a prisoner's religion." *Cutter v. Wilkinson*, 544 U.S. 709, 725, 125 S. Ct. 2113, 2124 n. 13, 161 L. Ed. 2d 1020 (2005). "The Act defines 'religious exercise' to include 'any exercise of religion, *whether or not compelled by, or central to*, a system of religious belief.'" *Id.* at 715, 125 S. Ct. 2113 (emphasis added) (quoting 42 U.S.C. § 2000cc–5(7)(A)). In light of *Cutter*, we have recognized that "portions of th[e] definition [stated in *Murphy*] requiring religious beliefs to be a 'central tenet' or 'fundamental' may not apply to a RLUIPA claim." *Patel*, 515 F.3d at 813 n. 7.

*Gladson*, 551 F.3d at 832–33 (emphasis in original). "If the prisoner fails to put forth sufficient evidence that his ability to practice his religion has been substantially burdened, then the court need not apply the *Turner* test to the Free Exercise claim and the strict scrutiny test to the RLUIPA claim." *Id.* at 833.

Defendants argue that the spending policy limit on religious items from the restricted account does not substantially burden Huston's religious practice because there is no limit on religious spending from his non-restricted account. Doc. 8 at 5. Defendants cite a line of cases stating that regulations that make religious practice more expensive do not pose a substantial burden. *Id.* at 6. Defendants note that in his complaint, "Huston does not claim that he has been unable to buy a prayer shawl because of CCUSO's $100 annual limit on one account - he only says that he takes issue with 'how much and when' he can buy such items." *Id.* at 7. Defendants further note that Huston admits he owns tefillin and a 12-volume set of religious texts. *Id.* Finally, defendants argue that because Huston claims the books are necessary to continue his studies as an ordained rabbi, the limits are not a substantial burden because vocational training is not a federally protected right. *Id.* at 7-8. Defendants claim that "[n]owhere does he allege that these materials are essential" to his religious practice, "he only claims they are necessary for 'education and enlightenment.'" *Id.* at 8.

In his resistance (Doc. 9), Huston claims he has alleged a substantial burden, stating that his prayer shawl is from 1994, has holes and would cost $112 to replace. *Id.* at 1. To the extent that Huston is now claiming that the policy has prevented him from purchasing a new prayer shawl, he did not include this in his complaint.

Taking facts and inferences in the light most favorable to Huston, I find that he has alleged a substantial burden. First, he has alleged not only that the religious books are necessary for "education and enlightenment," but also that his religion requires him to study religious tomes. Doc. 4 at 5. Thus, he appears to allege this religious study is a central tenet of his religion. Second, Huston has alleged that several items he believes necessary for his religious practice cost more than the $100 annual spending limit from his restricted account. Although the defendants maintain that Huston has unlimited religious spending from his non-restricted account, this ignores the disparity in the funding sources between the two accounts which, as Huston has noted, impacts the timing and quantity of religious items he can purchase. Finally, the defendants note that Huston

8

owns a 12-volume set of Talmudic oral law. They neglect to mention that Huston was given a one-time exception to purchase the set, which he believed his religion required him to study and follow. Doc. 4 at 2, 5. Because Huston has alleged facts sufficient to show a substantial burden, I will proceed to the next steps of both his Free Exercise and RLUIPA claims.

## A.   *Free Exercise Clause*

After a plaintiff has shown a substantial burden on his or her Free Exercise rights, the regulation remains valid "if it is 'reasonably related to legitimate penological interests.'" *Gladson*, 551 F.3d at 831 (quoting *Murphy*, 372 F.3d at 982). Courts employ the four-factor *Turner* test to determine whether a regulation is reasonable: (1) whether there is a "valid rational connection" between the prison regulation and the government interest justifying it; (2) whether there is any alternative means for exercise of the asserted right; (3) whether an accommodation would have "a significant ripple effect" on the guards, other inmates and prison resources and (4) whether there is an alternative that fully accommodates the prisoner "at de minimis cost to valid penological interests." *Murphy*, 372 F.3d 979, 982-83.

Defendants argue that the spending policy "is reasonably related to legitimate penological interests and thus valid." Doc. 8 at 15. Defendants claim that "restricted-account spending limits serve the legitimate penological interests of maintaining patient solvency for smooth transition into the community and preserving institutional safety and security." *Id.* Defendants further state that if limits did not exist on restricted-account spending, "patients could drain significant savings with frivolous spending and compromise their post-release stability." *Id.* at 16. Huston responds to defendant's "legitimate penological interest" argument by stating that CCUSO residents are patients, not prisoners, claiming that the patients are not bound by the Prison Litigation Reform Act and asserting that restricted accounts are not present in prisons. Doc. 9 at 3.

9

The annual religious-spending limit appears rationally related to the government interest of ensuring that CCUSO patients are solvent upon release. However, neither Huston nor the defendants address the remaining *Turner* factors. At this early stage of the case, I cannot find that the challenged regulation is "reasonably related to legitimate penological interests." Therefore, dismissal is not warranted.

## B.    RLUIPA

Under RLUIPA, after the "substantial burden" step, defendants must prove the regulation or action is "the least restrictive means to further a compelling interest." *Singson v. Norris*, 553 F.3d 660, 662 (8th Cir. 2009) (quoting *Murphy*, 372 F.3d at 988). Thus, a Free Exercise claim under RLUIPA is subject to a higher standard of review than a Free Exercise claim under the First Amendment. *See Murphy*, 372 F.3d at 986. The defendants claim that the spending policy furthers a compelling government interest because it "helps maintain institutional security and ensure patients are financially solvent when they transition to the community." Doc. 8 at 8. The defendants next claim the policy is the least restrictive means of achieving that interest. *Id.* at 10. Huston does not address these arguments. Without considering whether the spending policy furthers a compelling government interest, it is not obvious that the spending policy is the least restrictive means to ensure that CCUSO patients are solvent upon release. Indeed, less restrictive means are not difficult to imagine. For example, CCUSO could limit a patient's religious spending from a restricted account if the restricted account balance falls below a set amount. Therefore, dismissal of Huston's RLUIPA claim is inappropriate at this time.[3]

---

[3] In addition to injunctive relief, Huston seeks $120 in damages. Doc. 4 at 2. Defendants request the dismissal of all monetary remedies sought against them, citing sovereign immunity and qualified immunity. Doc. 8 at 12-13, 16-17. Because Huston primarily seeks injunctive relief, I will not address these arguments, or other arguments about relief sought, at this time. I will be in a better position to determine whether qualified immunity applies once the factual record is further developed.

## V.     CONCLUSION

For the foregoing reasons:

1.     Defendants' motion (Doc. 7) to dismiss is **denied**, except that plaintiff Arthur Triplett is hereby **dismissed** from this case for lack of standing due to his failure to allege any injury.

2.     Defendants' motion (Doc. 14) to strike is **denied**.


**IT IS SO ORDERED** this 17th day of March, 2026.

_____
Leonard T. Strand
United States District Judge

11